UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FLOYD LEE, ) | |
| ) | |
| Plaintiff ) | |
| ) | CAUSE NO. 3:05-CV-61 RM |
| vs. ) | |
| ) | |
| DALMAN, *et al.,* ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

Floyd Lee, a *pro se* prisoner, filed this suit under 42 U.S.C. § 1983, against Deputy Dalman and Deputy Coburn in their individual capacities for monetary damages. Mr. Lee contends that the defendants were deliberately indifferent to his medical condition because Deptuy Dalman refused to reorder his special diabetic diet tray and Deputy Coburn refused to let him test his blood sugar. Mr. Lee also asserts that the defendants used excessive force on July 27, 2003 when they slammed his head into a cement wall.[1]

The defendants seek summary judgment. The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. Outlaw v. Newkirk, 259 F.3d 833, 836-837 (7th Cir. 2001). Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving

---

[1] All other claims were dismissed in the October 31, 2005 screening order (docket #10).

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events") (quoting Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

### DEPUTY DALMAN'S MOTION FOR SUMMARY JUDGMENT ON THE MEDICAL DELIBERATE INDIFFERENCE CLAIM

The screening order allowed Mr. Lee to proceed on his claim that Deputy Dalman was deliberately indifferent by refusing to reorder a special diabetic diet

2

tray. Deputy Dalman asserts that he was not deliberately indifferent to Mr. Lee's medical needs.

In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. Gutierrez v. Peters, 111 F.3d at 1373.

Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991).

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.,* the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted).

> Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official

3

> actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless.

Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to show that a defendant merely failed to act reasonably. Gibbs v. Franklin, 49 F.3d 1206, 1208 (7th Cir. 1995).  Even medical malpractice and incompetence do not state a claim of deliberate indifference. Walker v. Peters, 233 F.3d 494 (7th Cir. 2000).

In his sworn answers to discovery, Deputy Dalman asserts that after Mr. Lee requested a special diet tray, he contacted medical and food services and found that Mr. Lee did not have a doctor's order for a special diet. Based on that information, Deputy Dalman denied Mr. Lee's request for a special diet tray. (docket #81-4, page 2). The official jail log from this date indicates that Deputy Dalman called the kitchen and checked with a nurse to inquire whether Mr. Lee was supposed to receive a special diet tray. The kitchen manager indicated that he wasn't on the list to receive a special diet tray, and the nurse indicated that Mr. Lee was under no dietary restrictions. (docket #81-4, page 6). Deputy Dalman then instructed Mr. Lee to fill out a medical form so that the situation could be straightened out. (docket #81-4, page 6).

Mr. Lee attaches various medical records indicating that he has diabetes. These records do not indicate that a doctor had prescribed a special diet for his diabetes on June 2, 2003. Mr. Lee's own affidavit indicates that the medical director canceled Mr. Lee's diet tray and that Deputy Dalman was doing his job.

4

(docket #90-7, page 1). Mr. Lee doesn't assert that Deputy Dalman prevented him from getting a special diet tray that had been prescribed by a doctor or prevented him from filing a grievance with the medical department. As Mr. Lee's own statements show, there is no genuine issue of material fact that Deputy Dalman was not deliberately indifferent to Mr. Lee's medical condition when Deputy Dalman did not provide Mr. Lee a diabetic diet tray. Summary judgment will be granted on this issue.

DEPUTY COBURN'S MOTION FOR SUMMARY JUDGMENT ON THE MEDICAL DELIBERATE INDIFFERENCE CLAIM

Mr. Lee contends Deputy Coburn was deliberately indifferent to his medical needs when Deputy Coburn refused to allow him to check his blood sugar. Deputy Coburn asserts that he was not deliberately indifferent.

In his motion, Deputy Coburn alleges that he is not the individual who conducts blood sugar testing, which is done in medical. Deputy Coburn contends that he never refused to take Mr. Lee to get his blood sugar tested or prevented him from going to medical to have his blood sugar tested. Nowhere in his response or designated evidence does Mr. Lee dispute that Deputy Coburn doesn't conduct the blood sugar testing. Nor does Mr. Lee dispute that Deputy Coburn never refused to take him to medical or prevented him from going to medical to check his blood sugar. Because Mr. Lee has provided no evidence to support this claim, there is no genuine issue of material fact that Deputy Coburn was not deliberately

5

indifferent to Mr. Lee's medical condition by refusing to let him test his blood sugar. Summary judgment will be granted on this issue.

### DEPUTY DALMAN AND DEPUTY COBURN'S MOTION FOR SUMMARY JUDGMENT ON THE EXCESSIVE FORCE CLAIM

Mr. Lee alleges that the defendants used excessive force by slamming his head into a cement wall on July 27, 2003. The defendants deny slamming his head into a cement wall, and that any force they used was reasonable.

> Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. As the District Judge correctly perceived, such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted are relevant to that ultimate determination. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.
>
> When the ever-present potential for violent confrontation and conflagration, ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive

>   measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (citations, ellipsis, and quotation marks omitted).

On July 27, 2003, the defendants were exchanging the inmates' clothing. When they gave Mr. Lee his clothing, he refused to put it on, claiming that it was the wrong size. After the defendants again ordered Mr. Lee to put on the clothing, they ordered him to gather his belongings so they could transfer him to deadlock for interfering with the prison's management and refusing to comply with a lawful order. The defendants admit grabbing Mr. Lee's arm to escort him to deadlock.

In his affidavit filed in response to the motion, Mr. Lee asserts that defendants Dalman and Coburn rammed him head first into the wall. He also asserts that he asked to be transported to the hospital for "injuries sustained as a result of being rammed into the block wall." In these sworn statements, Mr. Lee still alleges that the defendants rammed his head into a cement wall on July 27, 2003. Therefore, there is a genuine issue of material fact: Mr. Lee says the

defendants slammed his head into the wall, the defendants say they did not. Summary judgment on this issue must be denied.

CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART the defendants' motion for summary judgment (docket #81). The court GRANTS the defendants' motion for summary judgment on the medical deliberate indifference claims and DENIES the motion for summary judgment on the excessive force claim.

SO ORDERED.

Dated this 22nd day of February, 2007.

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court